UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Elaine F. Soltis,                                No. 14-cv-574 (LIB)

    Plaintiff,

v.                                                **ORDER AND MEMORANDUM**

Carolyn W. Colvin,
Acting Commissioner of Social Security,

    Defendant.

---

This matter is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 13), and Defendant's Motion for Summary Judgment (Doc. No. 16).  For the reasons stated in the attached Memorandum, **IT IS HEREBY ORDERED** that:

  1.  Plaintiff's Motion for Summary Judgment (Doc. No. 13), is **DENIED**;

  2.  Defendant's Motion for Summary Judgment (Doc. No. 16), is **GRANTED**; and

  3.  The attached Memorandum is incorporated in this Order by reference.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: December 31, 2014

          s/Leo I. Brisbois
          Leo I. Brisbois
          U.S. MAGISTRATE JUDGE

**MEMORANDUM**

This is an appeal from the Commissioner of Social Security's denial of Plaintiff's application for disability insurance benefits. The Commissioner held a hearing on Plaintiff's application for benefits, which took place before an Administrative Law Judge ("ALJ"). At that hearing, a vocational expert testified that someone with Plaintiff's impairments would be able to do the work of a mail clerk, a small products assembler, and an electronics worker. The ALJ relied on the vocational expert's opinion that Plaintiff could do those jobs, and as a result, the ALJ concluded that Plaintiff was not disabled. The ALJ's reliance on the vocational expert's opinion presents the sole issue in this appeal.

Pursuant to Local Rule 7.2, the parties have filed cross-motions for summary judgment. In her motion for summary judgment, Plaintiff contends that the ALJ erred in relying on the vocational expert's testimony. For the reasons discussed below, the Court concludes that the ALJ properly relied on the vocational expert's testimony in denying Plaintiff's application for benefits. Thus, the Court denies Plaintiff's motion for summary judgment, and grants the Commissioner's for summary judgment.

**BACKGROUND**

## I.    Procedural History

Plaintiff filed an application for disability insurance benefits ("DIB") on April 4, 2011, alleging that she became disabled on January 1, 2004. (Doc. No. 9, Social Security Administrative Record ("AR") 170, 222.) The Commissioner initially denied her applications. (AR 104.) Plaintiff sought reconsideration, and the Commissioner denied her application again. (AR 116.) Plaintiff requested a hearing before an ALJ. (AR 121.) ALJ Mary M. Kunz held a hearing on Plaintiff's DIB application on December 3, 2012. (AR 9, 27.) The ALJ denied

Plaintiff's DIB claim in an Unfavorable Decision dated December 17, 2012.   (AR 6-24.)

Plaintiff filed a request for review of the ALJ's decision with the Appeals Council (AR 5), and

the Appeals Council denied Plaintiff's request for review on January 13, 2014.  (AR 1.)  Thus,

the ALJ's decision became the final decision of the Commissioner for purposes of judicial

review.  *See Grissom v. Barnhart*, 416 F.3d 834, 836-37 (8th Cir. 2005).

## II.     Relevant Medical History

There is no dispute in this case about the nature or extent of Plaintiff's physical

impairments.  Those impairments include Plaintiff's history of right-shoulder problems.  Plaintiff

has had multiple shoulder surgeries as a result of right rotator cuff tearing and arthropathy.  (AR

305, 308, 340, 391, 396, 748).)  Plaintiff also has serious back problems.  She has degenerative

disc disease affecting her lumbar spine, which required fusion surgery.  (AR 382, 390, 436-37,

620.)  Plaintiff has also had fusion at her C6-7 disc.  (AR 412-13, 435-36.)  Finally, Plaintiff

suffers from fibromyalgia.  (AR 380, 435-36).)

## III.    Administrative Hearing

At the December 3, 2012 hearing, the ALJ heard testimony from Plaintiff, medical expert

Dr. Andrew Murphy Steiner, and vocational expert Rodridge Burzynski.[1]  (AR 26.)  Plaintiff

testified about the limitations she experiences as a result of her shoulder problems, the problems

with her back, and her fibromyalgia symptoms.  She explained that she can lift between 5 and 10

pounds, has difficulty standing, and was not able to perform her prior job duties as a fast-food

worker without the help of co-workers.  (AR 32, 34, 39.)  She testified to having difficulty

---

[1]     Dr. Steiner is a medical expert under contract with the Social Security Administration to
provide testimony at contested hearings regarding applications for Social Security benefits.
(AR. 44.)  Mr. Burzynski is a vocational expert who also provides testimony at contested
hearings under contract with the Social Security Administration.  (AR 48.)

reaching overhead with her right arm and even greater difficulty doing work overhead with her right arm.   (AR. 32-33.)   Plaintiff stated that she struggles with yard work, requires help preparing dinner, and needs assistance doing other household tasks like washing dishes.   (AR 33, 36, 37-38.)   She also testified that her fibromyalgia causes pain throughout her extremities.   (AR 42.)

The medical expert acknowledged Plaintiff's long history of problems with her right shoulder, that she had problems with pain in her mid-back, and that she had been diagnosed with fibromyalgia.   (AR 44-46.)   He concluded that given these severe impairments, Plaintiff would be limited to "a light residual." (AR 46)   This means that in the medical expert's opinion, Plaintiff could lift no more than 20 pounds at a time, could frequently lift or carry objects weighing up to 10 pounds, and could only stand or walk up to six hours in an eight-hour work day.  *See* 20 C.F.R. § 404.1567(b) (defining "light work").   Dr. Steiner also testified that Plaintiff could not do any overhead work and could not do work that required anything more than occasional reaching beyond 18 inches away from her trunk with her right arm.   (AR 46.)

After the medical expert testified at the hearing, the ALJ received evidence from the vocational expert about the type of work, if any, someone would be able to perform with limitations similar to Plaintiff's.   (AR 48-55.)   The ALJ posed a hypothetical question to the vocational expert to determine if an individual with Plaintiff's limitations could find suitable work.   Specifically, the ALJ posed the following hypothetical to the vocational expert:

> I want you to assume for the purposes of these questions that we have an individual who was 50 years old during the relevant time period . . . with a high school education and no past relevant work, and this individual is impaired by a number of conditions including a right shoulder condition with history of rotator cuff tear and subsequent surgeries, including a shoulder replacement.   There is also a history of a past C6-7 fusion and discectomy, degenerative changes in the thoracic spine.   There's a diagnosis of fibromyalgia and deconditioning . . . and also a history of lumbar fusion [at] L5-S1[.]

(AR 50-51.)  Because of these impairments, the ALJ asked the vocational expert to assume that the person was limited to light work, but in addition to the typical restrictions placed on an individual limited to light work, this person was also unable to do jobs that required overhead work and jobs that required anything more than occasional reaching beyond 18 inches from the trunk on the right.  (AR 51.)

In response to that hypothetical, the vocational expert testified that there it was his opinion that jobs exist in the national economy that such a person could perform.  (AR 52.) Specifically, the vocational expert testified that a person with those limitations could do the work of a "mail clerk," a "small products assembler," and an "electronics worker."  (AR 52.)  He identified these jobs by their citations in the Dictionary of Occupational Titles ("DOT").[2]  (AR 52.)  The vocational expert testified that the his opinion regarding those jobs is "within the guidelines of the DOT."  (AR 53.)  The ALJ and the vocational expert then engaged in the following exchange regarding these jobs:

Q      [ALJ] Does the [DOT] discuss - - does, does it break down like overhead reaching as opposed to extended reach.

A      [Vocational Expert] No.

Q      Okay. So what would your opinion be based on?

A      The same.  My professional experience

---

[2]      The DOT is a Labor Department guide to job ability levels that has been approved for use in Social Security Cases.  *See* 20 C.F.R. § 404.1566(d)(1).

(AR 53.)[3]   In other words, the vocational expert testified that in his professional experience, Plaintiff could perform the work of a mail clerk, small-products assembler, or electronics worker even if she was restricted to no overhead work and only occasional extended reaching, and even though the DOT described each of those jobs as requiring either frequent or constant reaching. As explained below, the ALJ relied on this opinion in the written decision denying Plaintiff's application for benefits.

## IV.    The ALJ's Decision

The ALJ followed the sequential, five-step process required by the Code of Federal Regulations in concluding that Plaintiff was not disabled during the relevant period.  Under this five-step inquiry, a claimant is disabled only if: (1) she is not presently engaged in substantial gainful activity; (2) she has a severe impairment that significantly limits her ability to perform basic work activities; (3) her impairment is presumptively disabling; (4) if her impairment is not presumptively disabling, she cannot perform her past relevant work; and (5) if she cannot perform her past relevant work, the Commissioner proves that there are jobs that exist in significant numbers that the claimant can perform.  *Simmons v. Massanari*, 264 F.3d 751, 754-55 (8th Cir. 2001).  In this case, the ALJ's conclusion at step five of this process is at issue.[4]

---

[3]      When examined by Plaintiff's counsel at the hearing, the vocational expert testified that the mail clerk, small products assembler, and electronics worker jobs would all require repetitive use of both upper extremities throughout the day.  (AR 54.)

[4]      Only the final step of this sequential process is relevant to this appeal.  At the first step, the ALJ found that plaintiff did not engage in substantial gainful activity since her alleged onset date, which was amended to August 28, 2010 at the time of the hearing.  (AR 11.)  At step two, the ALJ concluded that Plaintiff had the severe impairments of past rotator cuff tear with multiple surgeries, degenerative disc disease of the lumbar spine with L5-S1 fusion, generative disc disease of the cervical spine with past C6-7 fusion, and fibromyalgia.  (AR 11-12.)  At step three, the ALJ concluded that Plaintiff did not meet or equal one of the presumptively disabling listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 12-13.)  At step four, the
(Footnote Continued on Following Page)

At step five, the ALJ ultimately concluded that for the relevant time period, there were jobs that existed in significant numbers in the national economy that the claimant could have performed.  (AR 17.)  The ALJ explained that if a claimant can do light work, the Commissioner will generally conclude that the person is not disabled.   But because Plaintiff had additional limitations preventing her from doing overhead work and extended reaching, the ALJ needed to determine "the extent to which these limitations erode the unskilled light occupational base." (AR 17.)  The ALJ explained that to make such a determination, she asked the vocational expert whether "jobs existed in the national economy for an individual with [Plaintiff's] age, education, work experience, and residual functional capacity."  (AR 17.)  The ALJ noted that the vocational expert identified the jobs of mail clerk, small products assembler, and electronics worker as jobs Plaintiff would have been able to do.  (AR 17.)  Then, the ALJ explained:

> Although the vocational expert's testimony [that Plaintiff could perform these jobs] is inconsistent with the information contained in the Dictionary of Occupational Titles, there is a reasonable explanation for the discrepancy.  The vocational expert testified the Dictionary of Occupational Titles (DOT) does not address overhead or extended reaching (See Hearing Record).  ***However, he noted his opinion was based on his professional experience studying occupations similar to those he cited and placing individuals in those positions*** (See id.).  His testimony is given great weight here, as his explanation is reasonable and based on his expertise in the field.

(AR 17 (emphasis added).)  Based on the vocational expert's testimony, the ALJ concluded that Plaintiff could make an adjustment to other work and, therefore, was not disabled within the meaning of the Social Security Act.  (AR 18.)

---

(Footnote Continued from Previous Page)
ALJ concluded that Plaintiff retained the residual functional capacity to perform light work that would not involve overhead work or more than occasional extended reaching beyond 18 inches from the trunk.  (AR 13-16.)

## DISCUSSION

### I.    Standard of Review

Judicial review of the Commissioner's decision to deny disability benefits is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. *Tellez v. Barnhart*, 403 F.3d 953, 956 (8th Cir. 2005). Substantial evidence means more than a scintilla, but less than a preponderance. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). The substantial evidence test requires "more than a mere search of the record for evidence supporting the [Commissioner's] findings." *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir.2007) (alterations in original) (quoting *Gavin v. Heckler*, 811 F.2d 1195 1199 (8th Cir. 1987)). Rather, the court "must take into account whatever in the record fairly detracts from its weight." *Id.* (quoting *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474, 488 (1951)).

When reviewing the record for substantial evidence, the court may not reverse the Commissioner's decision simply because substantial evidence exists to support the opposite conclusion. *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984). Moreover, the Court may not substitute its own judgment or findings of fact for those of the ALJ. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The court must consider "the weight of the evidence in the record and apply a balancing test to evidence which is contradictory." *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989). After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision, the court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir.1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008).

The decision of the ALJ "is not outside the 'zone of choice' simply because we might have reached a different conclusion had we been the initial finder of fact."  *Id.*

II.   **Analysis**

   A.   **The Parties' Arguments**

   Plaintiff argues that the vocational expert's testimony that an individual with Plaintiff's impairments could do the work of a mail clerk, a small-products assembler, or an electronics worker did not constitute substantial evidence with which the Commissioner could meet her burden at step five to prove that there are jobs in the national economy Plaintiff can perform. (*See* Doc. No. 14, Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") 8-11.)  Plaintiff asserts that the descriptions for these jobs in the DOT conflict with Plaintiff's limitations on overhead work and extended reaching and that the ALJ failed to obtain a reasonable explanation from the vocational expert about that conflict.  (*Id.* at 9.)  Further, Plaintiff contends that the ALJ committed error in finding that the vocational expert's testimony was supported by "'his professional experience studying occupations similar to those he cited and placing individuals in those positions.'"  (*Id.*)  Instead, Plaintiff argues that the record contains no evidence that the vocational expert "ever placed anyone in any jobs similar to the . . . occupations" he testified that Plaintiff could perform.  And Plaintiff asserts that because there was no evidence that the vocational expert "has any particular knowledge regarding the occupations at issue or similar occupations," the ALJ relied on facts not in evidence rather than on substantial evidence in the record to deny Plaintiff's claim for benefits.  (*Id.* at 11.)

   The Commissioner contends that the ALJ properly relied on the vocational expert's testimony.  (Doc. No. 17, Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def.'s Mem.") 7-10.)  The Commissioner asserts that the ALJ properly addressed any discrepancy between the DOT's

description of the mail clerk, small products assembler, and electronics worker jobs on the one hand, and the vocational expert's testimony that someone with Plaintiff's impairments could perform those jobs on the other. The Commissioner contends that the ALJ asked the vocational expert about any conflict between his testimony and the DOT, obtained an explanation for that conflict, and then properly based the decision that Plaintiff was not disabled based on the expert's testimony. (*Id.* at 8-9.)

      **B.**      **The ALJ Obtained a Reasonable Explanation for the Apparent Conflict between the DOT and the Vocational Expert's Occupational Evidence.**

The Court first concludes that the ALJ complied with the requirement that an adjudicator obtain a reasonable explanation for any apparent conflict between the DOT and the vocational expert's ("VE") occupational evidence. Where such a conflict appears to exist, before an ALJ can rely on the VE's evidence, Social Security Ruling (SSR) 00-4p requires an ALJ to obtain a reasonable explanation for the conflict. *See* SSR 00-4p, 2000 WL 1898704, at *1, *4 (Dec. 4, 2000). Specifically, this policy provides that "[w]hen there is an apparent unresolved conflict between the VE . . . evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled." *Id.* at *2.

Here, the ALJ plainly inquired whether the VE's opinion that someone with Plaintiff's impairments could do the work of a mail clerk, small products assembler, or an electronics worker conflicted with the DOT, and the VE provided an explanation. To clarify, the apparent conflict between the DOT descriptions and the VE's testimony arose because each of the jobs the VE identified requires either "frequent" or "constant" reaching. (*See* Pl.'s Mem. Ex. A at 3; *id.*, Ex. B at 3; *id.*, Ex. C at 3.) Because of Plaintiff's shoulder problems, she cannot do overhead work, which would presumably involve reaching overhead. And Plaintiff can only occasionally

reach beyond 18 inches from her trunk.  Because the ALJ recognized that those reaching limitations for Plaintiff may have conflicted with the DOT descriptions for the jobs the VE believed Plaintiff could still do, the ALJ asked the VE whether his opinion that Plaintiff could perform the work of a mail clerk, a small-products assembler, or an electronics worker was consistent with the DOT's classifications.  (AR 53.)  With respect to Plaintiff's reaching and overhead-work limitations, the ALJ asked whether the DOT distinguishes between overhead reaching and extended reaching, and the VE said that it does not.  (*Id.*)  The VE testified that he based his "opinion" that Plaintiff could do the jobs he identified on his "professional experience."  (*Id.*)  Thus, the ALJ did not ignore an apparent conflict between the VE's testimony and the DOT with respect to Plaintiff's reaching and overhead-work limitations.  Instead, the ALJ obtained evidence that the DOT's descriptions of the reaching required by the jobs at issue does not encompass overhead work, nor does it include frequent or constant extended reaching.  Because Plaintiff had no blanket limitation preventing ***any*** frequent or constant reaching, this amounts to a reasonable explanation why the VE would offer an opinion that a person with Plaintiff's impairments could work as a mail clerk, small products assembler, or electronics worker.

Accordingly, after considering the VE's testimony as a whole, the Court concludes that the ALJ fulfilled her responsibility to obtain a reasonable explanation for the apparent conflict between the VE's occupational evidence and the DOT's description of the jobs at issue.

**C.     The ALJ Adequately Explained How She Resolved the Apparent Conflict Between the Vocational Expert's Occupational Evidence and the Description of the Relevant Jobs in the Dictionary of Occupational Titles.**

Plaintiff also argues that the ALJ failed to adequately explain how she resolved the conflict between the VE's testimony and the DOT's descriptions of the relevant jobs at step five

of the sequential process.  Plaintiff asserts that there was no evidence in the record to support the ALJ's conclusion that the VE based his testimony on "his professional experience studying occupations similar to those he cited and placing individuals in those positions." (Pl.'s Mem. at 9.)

Under Social Security Ruling 00-4p, when there is an apparent conflict between the DOT's description of a job and a VE's opinion that a claimant can do that job, an ALJ must "explain in the determination or decision how he or she resolved the conflict . . . and must explain the resolution of the conflict irrespective of how the conflict was identified." *Id.* at *4. The Court also notes that an ALJ has a duty, in reaching a disability decision, to fully and adequately explain factual findings to allow the Court to determine whether substantial evidence supports the ALJ's decision. *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 822 (8th Cir. 2008) (remanding because the ALJ's factual findings were insufficient for meaningful appellate review).  However, "an ALJ's failure to adequately explain . . . factual findings is 'not a sufficient reason for setting aside an administrative finding' where the record supports the overall determination." *Id.* (citing *Senne v. Apfel*, 198 f.3d 1065, 1067 (8th Cir. 1999)).

Here, as Plaintiff notes, the VE did not testify about the nature of his professional experience studying occupations similar to the jobs of mail clerk, small products assembler, and electronics worker.  Nor did the VE specifically testify about his professional experience placing individuals in such positions.  But the ALJ's discussion of the VE's professional experience does not require reversal or remand because the record supports the ALJ's determination that jobs existed in significant numbers in the national economy that Plaintiff could have performed. Again, the VE testified that the DOT does not describe a job as a mail clerk, small products assembler, and electronics worker as involving overhead work or more than occasional extended

reaching beyond eighteen inches from the trunk.  He offered his opinion that a person who is restricted from doing overhead work and from doing more than occasional extended reaching can still do those jobs.  And the VE explained that in his professional experience, the jobs he referred to ***do not*** require overhead work or more than occasional extended reaching.  In turn, the ALJ relied on the VE's testimony because the VE explained that the DOT "does not address overhead or extended reaching" for the jobs at issue.  The Court concludes that even if the ALJ's written decision could have described the reasoning behind the ALJ's reliance on the VE's testimony more clearly, no reversal or remand is required because the record supports the ALJ's determination at step five.

**D.     Plaintiff's Remaining Arguments Do Not Require Reversal or Remand.**

Plaintiff also asserts that the VE testified that all of the jobs he cited would require repetitive use of both arms.  (Pl.'s Mem. 10; AR 54.)  Thus, Plaintiff appears to argue that the ALJ's conclusion at step five was contradicted by the VE's testimony or that this evidence detracts from the evidence relied on by the ALJ.  However, even if the Court were the initial fact finder and, based on this testimony, could reach an inconsistent conclusion about Plaintiff's ability to work as a mail clerk, small products assembler, or electronics worker, this would not mean that the ALJ's conclusion is not supported by substantial evidence on the record as a whole.  Based on the evidence in the record, the VE's testimony that Plaintiff could do the jobs e identified, even though a person doing those jobs would need to repetitively use both arms, is not necessarily inconsistent with Plaintiff's inability to do overhead work or engage in extended reaching on more than an occasional basis.  Plaintiff's limitations did not restrict her from repetitive use of both arms.  Because there was a sufficient evidentiary basis for the ALJ to conclude that Plaintiff could do the jobs at issue, the ALJ's decision "falls within the 'available

zone of choice'" regarding Plaintiff's ability to do the jobs identified by the VE.  *See Bradley,* 528 F.3d at 1115.

Plaintiff further argues that the DOT classifications for the jobs at issue should be controlling because the VE's testimony conflicts with the DOT.  (Pl.'s Mem. 10 (citing cases).)  However, cases concluding that unrebutted DOT classifications control over conflicting expert testimony are distinguishable.  For example, in *Porch v. Chater*, 115 F.3d 567, 571-72 (8th Cir. 1997), the Eighth Circuit concluded that a VE's testimony that the claimant could do the work of a nurse consultant or a cardiac technologist did not constitute substantial evidence on which the Commissioner could meet her burden at step five of the sequential process.  The court explained that, as described in the DOT, the jobs the VE pointed to required more educational development than the claimant possessed, and there was no testimony from the VE beyond his discussion of the physical demands and strength ratings for those jobs.  *Id.*  Here, the situation is quite different.  The ALJ and the VE did not ignore a portion of the requirements for any of the jobs at issue in this case.  Rather, the record reflects that the ALJ was concerned about whether the DOT's description of the reaching that can be involved in the work of mail clerks, small products assemblers, and electronics workers conflicted with the VE's testimony that the Plaintiff could do those jobs in light of Plaintiff's limitations.  The VE explained that the DOT descriptions of those jobs do not require overhead work or more than occasional extended reaching away from the trunk, and in the VE's professional experience, someone with Plaintiff's impairments could do those jobs.  Thus, there was no unrebutted conflict between the expert testimony and the DOT in this case.

Finally, Plaintiff argues that the Commissioner improperly shifted the burden at step five of the sequential evaluation to the Plaintiff.  (Pl.'s Mem. 10.)  But, as the Commissioner

correctly points out, at step five, the Commissioner has the burden to produce evidence showing that enough jobs exist that the claimant can perform, but the burden of persuasion that the claimant is disabled always remains on the claimant.  *See Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) ("Moreover, '[t]he burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.') (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citing *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995)). The Court concludes that there is substantial evidence on the record as a whole that Plaintiff retains the ability to do work other than her past relevant work and that such other work exists in substantial numbers in the national economy.  The Commissioner carried her burden to bring that evidence forward during the contested hearing before the ALJ, and the reached a reasonable conclusion based on the evidence before her.

## III.    Conclusion

At step five of the sequential evaluation, the Commissioner based her decision that Plaintiff was not disabled on substantial evidence on the record as a whole by finding that Plaintiff is able to work as a mail clerk, small products assembler, or electronics worker despite her limitations.  The ALJ obtained a reasonable explanation for an apparent conflict between the DOT descriptions of those jobs and the vocational expert's testimony that Plaintiff could perform the work they required.   And even if the ALJ's explanation how she resolved that apparent conflict could have been more detailed or precise, there was substantial evidence on the record as a whole to support the ALJ's overall determination that Plaintiff was not disabled.  For these and the other reasons discussed above, the Court denies Plaintiff's motion for summary judgment and grants the Commissioner's.